May it please the Court, Counsel, my name is Shira Keeval, I represent Mr. Ortner. And I'd like to focus today on the two issues that are most impactful for Mr. Ortner. The plainly erroneous jury instruction on the unlawful transportation of a minor, and then the Rule 8 improper joinder of the sex counts with the evil parts counts. It's well settled that transporting a minor across state lines is only a federal crime if it's done with a dominant, compelling, or motivating purpose of illicit sex in connection with the travel. This jury instruction was plainly erroneous because it allowed conviction based on a general though contemporaneous intention to have sex sometime in the future. Missing was any requirement to find a dominant, compelling, or motivating purpose. Sometime in the future or across state lines? It did not say across state lines, and because all it said was at the time of the transportation the defendant intended that the person would engage in unlawful sexual activity for which someone could be charged with a crime. It did not make any indication whatsoever of when that sex needed to occur or where. And adding to this error is the fact that no one ever mentioned, including in the jury instruction, what sex would be illegal in the state of Missouri. Did you object to that instruction? No, Your Honor. This is a plain error issue on appeal. So again, it didn't contain even a hint that the contemplated sex needed to be connected to the trip in some way. And further compounding this problem is that the jury was told what sex was illegal in Indian country within the boundaries of Oklahoma. Intent and motive or purpose are different concepts and they only sometimes overlap. And this is a situation where this erroneous jury instruction was prejudicial and there's a reasonable probability of acquittal if it had been instructed properly. And I'd like to go into a number of reasons. Is that the test? A reasonable probability? A reasonable probability that it would impact the outcome of the case. Go ahead. I don't believe that that's true. I think it's a burden shifting, but that the burden is the same. Harmlessness is the same. I need to prove a reasonable probability of a different outcome versus the government needing to prove a reasonable probability of the same outcome. The jury did not have to accept that a dominant, compelling, or motivating purpose of taking SW from the privacy of his own home and driving her to his semi-public office, hoping that it was empty, hoping that she would come inside, and hoping that they might have sex for the first time there. The jury did not have to accept that. Additionally, there was alternative explanations, not just for the trip, but alternative explanations for bringing SW on the trip. Everyone portrayed the trip as an errand or a part of an errand that sort of last second popped into his office to pick something up. The government explains on appeal that they don't contest that that was the motivation for the trip. And we agree that the question here for the jury should have been, what was the motive for bringing SW along on the trip? And Mr. Ortner testified that the reason that he was spending time with SW was because her family said, she's not talking to us. Please talk to her. Find out what's wrong. Why won't she talk to us? And the testimony on volume three, page 259, anytime Becky asked me to talk to her, she'd ask me to go take her for a ride. So we have an alternative explanation for why he would have taken SW. This is not a case where you're going to Las Vegas with someone who you want to have be your prostitute. This is the nearest big city, only a few miles over the border, and the place where Mr. Ortner worked. Additionally, the jury could have found that it was part of what they were doing that evening, and SW testified that they were in Mr. Ortner's house making bustles. And they could have concluded that they went on this journey to run errands. And finally, there were specific problems with SW's testimony about sex in Missouri that went directly to the question of motive. So SW did testify on direct. She said, this was the first time we had sex, and in the lead up to this trip, he asked me if I'd ever had sex before, and the government really latches onto that in their brief here to show that this was harmless. The problem is that she was thoroughly impeached and admitted that she couldn't remember the first time that she had sex. She admitted she told investigators initially that she first had sex in Oklahoma, and she admitted on cross as a substantive matter that she did not remember when they first had sex. And that's particularly important since the government's affirmative evidence of the motive for taking her on this trip was to have sex with her for the first time, and that their evidence was this conversation that allegedly happened in the lead up to the trip. There, I believe, is a reasonable probability here that the jury threw up their hands. We don't know who to believe about what happened in Missouri. We know that this allegation about what happened in Missouri only happened after Mr. Ortner had pled guilty to a state crime in Oklahoma. Maybe she wasn't happy about what happened there. We don't know who to believe after this impeachment. Luckily, we don't have to decide. There's also a reasonable probability that they said, you know, we don't know what's illegal in Missouri. It seems like everybody's arguing about Missouri, but we don't know if sex there would have been illicit. And luckily, it doesn't matter because we do know that sex in Oklahoma would have been illicit if it was an Indian country. And we believe, and that it would have been illicit generally. They had some information, not in the jury instruction, but at trial about statutory rape in Oklahoma. We have a presumption that the jury conscientiously follows the trial court's instructions. And here, when you have such a deficient jury instruction, you have so many different ways that the jury could have fought, and you don't have a jury instruction that allows for conviction on the basis of the government's theory, this court should not say that the errors in that jury instruction were harmful. Well, let's talk some about that jury instruction, and particularly the fact that the jury instruction itself pretty much mirrors the language of the statute, right? Except it adds on this phrase, I think. It seems like there's a phrase that's added in there that makes it perhaps even more clear. At the time of transportation. So at the time of transportation comes from old Mann Act cases. A lot of the law here comes from old Mann Act cases that have been applied to this specific statute. So in U.S. v. Lacey, this court specifically said, we still require a dominant compelling or motivating purpose, even with this particular 2423A statute transporting a minor. And why did the word intent satisfy that? The word intent doesn't... The government argues that the word intent could actually mean the only purpose. Right. It actually could have made the jury think that was the only purpose that he had. The Mann Act is a unique statute. Generally speaking, we don't care about motive or purpose in the criminal law, and when we talk about state of mind, what are you thinking about at the time? And usually that doesn't matter. I can give you the example of, say, I'm pulling the gun and I'm shooting this person. I intend to kill them. My motive in pulling the trigger, my purpose in pulling the trigger is to kill them. But we have this really unique statute where we take this actus reus of taking a minor across state lines, where there is nothing wrong with doing that. I do that with my children. It's just not a problem. And so to turn it into a crime, we say you have to have in your mind this intent to have illicit sex or for prostitution. And the Supreme Court in interpreting the Mann Act, and again, this applies to future cases, says intent and purpose. And they express over and over again that you require both and that they're not the same thing. And you can see that from the facts of Mortenson, where the Supreme Court says, okay, I'm transporting my prostitutes from Nebraska to Utah. They were my prostitutes before. I intend for them to be my prostitutes again. But I'm taking them across the border because they want to go on vacation when I go see my mom. Some of Mortenson, Mortenson kind of has some throwaway language where they say the intent instead of a dominant intent, but that's not what I'm focusing on here. What I'm focusing on is in that case, the Supreme Court said insufficient evidence. They didn't allow for the jury to say, well, you're always grooming your prostitutes. You're always either treating them harshly or treating them nicely to try to get them to be prostitutes. Here, the jury could have rationally concluded that you transported them because then when you get back to Nebraska, it would be a sufficiency case. It was a sufficiency case. Is there any case, we're on plain error here, is there any case where the court has said you've got to include that language in addition to just the language of the exact language of the statute? You've got to include some additional language about purpose. In the Tenth Circuit cases, that language always has been included. In the Seventh Circuit, the Seventh Circuit, which I argue has the same law, all the circuits here have the same law that all comes from the same old Mann Act cases, the Seventh Circuit in United States v. Wolfe found plain error on almost an identical jury instruction. They said there, even though there was evidence that the defendant had made repeated improper sexual advances against a number of young Asian women that he brought into his home, there was also some evidence, his testimony, that the purpose of him bringing them into his home was to help resettle them. Judge Posner not only found plain error on that record, but also reversed because of the preference. But again, was it an instructional error? Yes, it was instructional error on an instruction almost identical to here. The instruction was not sufficient because it didn't discuss ... Yes, it only said intent. Which case was that? U.S. v. Wolfe. I have to talk about it in my reply brief. If I may take a moment to talk about the improper joinder. The Rule 8 joinder here was improper because the counts were not connected with and did not constitute part of a common scheme or plan. The focus in Rule 8 joinder is on the offenses and the factual basis for the offenses. So the commission of one offense has to depend on or necessarily lead to the commission of the other. Or proof of the one act has to constitute or depend on proof of the other. The inquiry, again, it focuses on the offenses and factual basis, not on the government's overarching theory. Here, the government certainly made inflammatory arguments, but they didn't have evidence that was required for the connection. So let me talk about one quick First Circuit case and then the evidence that we had here. In United States v. Randazzo, the government had a theory. They said this defendant simultaneously orchestrated two sets of frauds as the head of a company that was experiencing financial difficulties. And the First Circuit said, no, you charged tax misrepresentation, you charged deceptive practices selling shrimp. But the tax misrepresentation did not help conceal the deceptive practices. Your counts are not sufficiently overlapped, and we're not really interested in this overarching theory. Here, we also have a problem because the eagle parts, the eagle feathers that S.W. was gifted, everyone agrees they were destroyed. They were not introduced into evidence, they were not what was found in his house. Were those eagle feathers that were destroyed even part of this case, or was it the eagle feathers that he found in his home as a separate count? The separate counts were ones that were found in his home several months later when a search warrant was executed. How would that prejudice the other transporting? The government spent about a third of the day of trial going into that, talking about how this was the largest amount ever of parts they'd found. But most importantly, it fit within this overarching argument the government was making, that Mr.  He raped not just a girl, but her whole tribe. He was a wolf in sheep's clothing. So the government is the one that's connecting them, that is trying to say, not only do we have the allegations here and our 413 witnesses, we have all of this stuff. He is just a fraud and a phony. Don't believe him. It's particularly important in this case. Well, the information, the evidence about the eagle feathers and how he used them to his scheme, that would have come in regardless of whether you had a separate count or not. That was a handful of pages of testimony that would have come in, yes, I believe so. And there wasn't really any dispute about that, was there? No, because Mr. Orner lives his life as an American Indian, and that's how he identifies and the evidence is that's what his descent is, and that he's identified that way for decades, and that he was considered an elder, and that he did, in fact- But my point is that the evidence came in about him using those feathers to gift to the victim, calls them big girl feathers, and also as an opportunity to basically interact with the victim, that it was all part of his grooming. That would have come in regardless, and the jury would have had an opportunity to decide what they were going to decide about that and the significance of it, regardless of the separate count. A small amount of it would have come in, I believe, but the problem is that there was no connection of the feathers that were found also with his regalia, with the work that they did together. So here we have a lot of evidence that came in, and I believe the government not only has waived their burden to argue prejudice, but that it's not a good idea for the court to seek it out here, because you have a counterfactual analysis. What would have been admitted at the different trials? Would there have been a limiting instruction? What would the limiting instruction have been? This court has not undertaken that type of analysis on its own before. This is a trial that was about credibility. When and where did these offenses happen? May I finish my answer? Yes. Thank you. And you won't be through then, either. I'm sorry? Go ahead. There was no limiting instruction that was given at this trial, and it was not harmless in this trial. I want to ask about the 1152-1153. Yes. What's your argument on that? I mean, was there really sufficient evidence that he was an Indian that would justify the charge that was dropped? Yes, Your Honor. There was testimony that he was descendant. The testimony that came in was that one of his great-grandparents was American Indian. That is a higher blood quantum than the evidence about the victim in the case of W. But it's clear that the notion of Indian in the federal statutes is not a racial issue. It's a political category, right? It's a combination of the two. Well, there's got to be the political component. Absolutely. You agree with that? Absolutely. So what tribe was he affiliated with? So that is not anything that courts have ever required. And I point specifically to the Ninth Circuit case, Bruce. You haven't, but let's see what the Supreme Court does with the Indian Child Welfare Act case, because I think that's pretty well a central feature. I think part of the issue in the Indian Child Welfare Act case is that we're talking about people whose parents don't want to identify and forced identification of others. I think that's a major issue here. But I think that here there was extremely strong evidence that at the time of the offense, which is the time that's relevant, that he was accepted as American Indian by the local tribes. Was he accepted as a member of that tribe? No, Your Honor, and no court has ever required that. The law doesn't require that. The U.S. Supreme Court has not required that. The treatises don't say that that's necessary. That sounds racial to me. For the same reason that we allow one Indian tribe to prosecute members of any tribe, as long as they fall within this classification of Indian. Yes, a member of another tribe. Once again, it does not have to be a member of another tribe. Membership of a tribe, if you have the blood quantum. You don't think that issue is an active issue these days? Thank you. I think that this court could hold the decision in this case if you want to to see what happens in Burkine. But I don't believe that that is the question that people are grappling with right now. Has there ever been a case where that issue wasn't, the issue here is present where someone, I think he's an Indian, he might belong to some other tribe, but he hasn't shown specific affiliation with a specific tribe? United States versus Bruce. We know what tribe the person was descendant from, and we know that person was not a member of that tribe. This is a Ninth Circuit case. It's their lead case on what it means to be Indian. We know what tribe that person was descended from. We know that they are not a member of that tribe. We know that where they were prosecuted in Montana, There was a lot, I may be getting my facts wrong on Bruce, but if it was a lead case in the Ninth Circuit, wasn't there a lot of evidence of affiliation, that he was treated as a member of that tribe in many ways, even though getting some of the benefits that come to members, there's a lot of benefits that come to members, even though he was not a member. Wasn't that the situation in that case? I recall him being prosecuted by tribal authorities. I don't remember if there were benefits in that case or not. But I believe that what we have here is we have a person who considered himself Indian. Everyone else seemed to consider him Indian. He participated in official tribal powwows in a capacity that he would not have been allowed to do if he were not considered Indian by those tribes. What tribe was he affiliated with? The Wyandottes, wasn't it? Are you saying, they thought he belonged to another tribe. Are you saying he was affiliated with the Wyandottes? No, I'm saying that that is not a requirement of the law, that no case has required that, this court has never required that, and specifically... Are you familiar with the restatement of Indian law that just came out from the American Law Institute? No. Well, let me read you section 69. I had a question I wanted to ask, but I've forgotten it now. I'll read the whole thing. Federal, state, and tribal criminal jurisdiction often depend on whether the accused and or victims are Indians. For criminal jurisdiction purposes, Indian status as defined by case law is required. A. Proof of some quantum of Indian blood. B. Proof of membership in or affiliation with a federally recognized tribe. That's its understanding of the law. So I think it's a significant possibility that the law requires... I'm not aware of any case, and I claim to be familiar with everything, where there's someone treated as an Indian for the federal criminal statutes who was not at least affiliated with a recognized tribe. And you're not a member, but affiliated. I think where the treatise makes a slight mistake is that I don't think... No, I'm serious. Is that I think that the recognition... Do you know who the people behind this document were? I mean, they're the big wheels of Indian law. And it's a very sympathetic to Indian group. I would take this very seriously. I do take it very seriously. It might be wrong. That's why I want to explain where I think that the mistake is. I believe that the mistake is that the recognition must come from a federally recognized tribe. But they don't need to recognize the person as belonging to a particular tribe or another. They have to recognize them as being Indian. And that's what Cohen's handbook states. And the quotation that the government puts in their brief from Cohen's handbook, they emphasize one part, but the second part... There are two. There's the handbook, the nutshell by Judge Canby, and then there's the Cohen treatise. I'm sorry. Is there a Cohen handbook? The Cohen treatise. Okay. I apologize. That the Cohen treatise is slightly different than what you are talking about and says that the recognition must come from a federally recognized tribe. I also think that if you look at the instructions that were given in this case, the instructions are correct and the government doesn't argue otherwise. And it says recognized as an Indian by a federally recognized tribe. It does not say recognized as affiliated with a federally recognized tribe. And certainly the case law is very clear that you do not need to be a member of any tribe whatsoever. So again, the government is not making an argument that the jury instructions as given were wrong. And I don't believe they were wrong. I believe they're right in a court. The issue goes to whether... The... Well, I'm not going to be able to frame it in five minutes. I think the issue goes... But if... The jury wouldn't have to make a decision if as a matter of law on this record the defendant was not an Indian. Do you agree with that? I believe that there was enough evidence on this record that the jury should have been required to decide. And I believe that the jury instructions about what it means to be Indian were correct. And when they say at the time of the offense recognized as an Indian by a federally recognized tribe, that there's significant evidence in this case that that had happened at this case. And again, the different criteria for recognition by a federally recognized tribe includes social recognition as an Indian through living on a reservation and participating in Indian social life. And there's no court that has said that prong is not enough by itself. All courts have said this is a balancing test for the jury. But every case that involved that has involved... The recognition was given by the tribe that the Indian was claiming membership or affiliation with. You don't have anything quite like the factual situation here where the tribe, the Wyandottes, thought this fellow was a member or affiliated with another tribe. I believe that in United States v. Bruce, the prosecuting tribe in Montana had no belief whatsoever that Mr. Bruce was a member of their tribe. And the question was whether that tribe in prosecuting him and allowing him to participate in Indian social life and live on the reservation recognized him generally speaking as being American Indian within the meaning of the statute. So in terms of prejudice, even the government doesn't argue prejudice here. The only court that has ever found no prejudice... You're not arguing prejudice, are you? That he was prejudiced? Yes. Yes, I am arguing that he was prejudiced because the jury was only instructed on 1150... only instructed on the cross... I'll call it cross-racial. I understand the issue with that. The cross-racial statute. It's complementary to 1152. And so there is no difference in whether they find one or the other, he's still guilty. So I think that the reason the government raised that as a prong for argument... The government played a serious game here. They went all out on their theory. They said he's not an Indian, he's a fraud, he's a phony, he's a wolf in sheep's clothing, he raped the whole tribe. They wanted him under the Major Crimes Act, didn't they? They charged him under the Major Crimes Act and then they just... they chose not to bring that to the jury because it would have undermined their whole theory of prosecution. So for this court to uphold the conviction because he could have been convicted under that alternative statute is to award the government's gamesmanship and allow them to get away with making that decision, retaining this credibility with the jury, retaining their incredibly... Well, the question is, is it plain error? You have... everything is plain error here. And this is... This is... The question on plain error is whether it is plain that they should have had to find that he was not an Indian under the statute that they were instructed on. That's plain. Next question is prejudice. And here, there is prejudice because there is a substantial likelihood that the jury would not have found that he was non-Indian. The only... The Ninth Circuit has rejected this argument saying that's not what... You can't just say, well, he would have been convicted of one or the other. That's not how proof beyond a reasonable doubt works and practically speaking, not how prejudice works. And no court has accepted it on prong four. The Eighth Circuit case the government relies on did take it on prong three, but that was a special case where it was a true mistake. This was a person they charged as I believe a non-Indian, but everyone agrees they were Indian. It didn't play into the facts of the case. It didn't play into the argument. And there wouldn't have been a defense to the other charge. And so they found no prejudice there. Ninth Circuit said that that was still the wrong decision. And I think that that's still the wrong decision because I don't think that's the prejudice inquiry. Thank you. I don't think she's finished. I do, but I think... Go ahead. Well, I guess I want to go back to Judge Hartz's question about the requirement that you show that he's recognized as an Indian by a tribe. And the fact that there really aren't any cases and you're citing one, a brute case, in what jurisdiction? The Ninth Circuit. So there's no Tenth Circuit cases that you can point to where we've ever suggested that that second requirement, that he's recognized as an Indian by a tribe, doesn't mean as an Indian within that tribe, as part of that tribe, affiliated with that tribe. This Court has never suggested that that is the law. And that's, again, why I'm looking at these jury instructions which are important with Tenth Circuit. And I guess I'm saying if this issue has never really been decided by us, it is a good point that Judge Hartz makes about what does that mean, recognized as an Indian by a tribe? Does it simply mean, okay, he's participating in a tribe's social events and they, under some people, have testified, some individuals within the tribe have testified, oh, we thought he was a member of such and such a tribe. And that is what happened here. But there's nothing like any sort of recognition of an official of any type by this tribe. All of the cases make very clear that official recognition, membership specifically, is not required. It can be federal recognition where the tribe disclaims any recognition of the person. It can be tribal recognition where the federal government disclaims providing benefits. There are... I guess I'm distinguishing between an individual who says, hey, I was the head of the powwow and I let him participate every year. And then later he signed up and he had his eagle feathers and I thought he was a member of such and such a tribe. Is that really being recognized as an Indian by a tribe? So I think this is a complicated factual question for a jury. And I don't think that this court can say as a matter of law Mr. Ortner was not Indian and so there should have been no instruction about or there's no problem that there was no instruction about this. The requirements, again, it's a balancing test to determine recognition by a federally recognized tribe or the federal government the following criteria may be considered. One, enrollment in a federally recognized tribe. Two, government recognition formally and informally through receipt of assistance reserved only to Indians. These are not at issue in this case. Three, enjoyment of the benefits of tribal affiliation. And four, social recognition as an Indian through living on a reservation and participating in Indian social life. We don't have living on the reservation. We do, Your Honor. I think I argued that in a sort of as best as I could on the record that I have but the county, the whole region where Mr. Ortner lives is Indian country. He lived miles. There's testimony that his house was only a few miles from SW's house which was right near the tribal center but we know that that county has been recognized by Oklahoma based on federal law as Indian land and reservation. So we know that he was living on a reservation. We know he was participating in Indian social life. These factors are not exclusive and only the first factor is dispositive if the person is an enrolled tribal member. So you can be enrolled or we can look at all these factors and it's a question for a jury. I'm not trying to argue that this is obvious. I want to give you time to answer but I think you've said everything you've said several times now. Absolutely. Thank you so much for the extra time. Well I thought it was a very important issue to be pursued. I'm sorry your time is up now. I'm already over time. Judge Kelly will let you speak but I'll let you speak. That's okay. May it please the court. Serena Case Hargrove    by clarifying something and that is there was absolutely no evidence of Indian blood in this case. There was absolutely no evidence of Indian blood in this case. There was no evidence of Indian blood on this record. There was no what I'm sorry. No evidence that the defendant had Indian blood. I thought there was testimony about that. Well your Honor a friend of the family testified that she believed the family had documented Indian blood and Mr. Ortner  had been raised to believe that but then his sister testified and this is at ER 233 that indeed they had been raised in the past tense they had been raised to believe that they had Indian blood that their great-grandfather had been deeded land by a tribe but a number of relatives she explained had tried to document that and had failed utterly. So although So the sister recognized that there was no Indian blood while it was still ambiguous. She made no statement affirmative statement that there was no Indian blood but she said that it could not be documented so basically there is nothing on the record that shows there is proof of Indian blood and at most the defendant could point to the recognition by some individual people in the Wyandotte tribe who believed and he knew that they thought he was Kwe Pa and he knew that was incorrect so the most he had was the cultural recognition by individual people never by a tribe. And case law is there case law suggesting that's not sufficient? Yes Your Honor The Prentiss case in this circuit adopted the Rogers standard Supreme Court case from the 19th century that it's a two-pronged test the first is proof of Indian blood and then the second is some cultural recognition connection what the defense counsel listed in the that was correct jury instruction correct statement of 10th circuit law so in this case the government dismissed the proof being more than some sort of cultural recognition proof of Indian blood Right Rogers is an interesting case and it does have an element of race and that it has an element of blood required to and in that case the there was a man who had been recognized by a tribe as a member but he didn't have any Indian blood and Rogers said no if you're Indian then you're not Indian for federal jurisdictional purposes and that has carried on to this day it is a matter of great debate and interest right now you know it's never been defined by statute but under the federal test that is in place now there was simply no evidence of Indian blood  case of 1153 35 and indeed they dismissed the 1153 charges the government had intended to have there was some statement in the transcript intended to have an instruction to the jury that they needed to find whether Mr. Ortner was Indian or not and that never occurred that was simply a mistake but it was not plain error it was error and it was clear obvious but it doesn't satisfy prong three or prong four this is an indian he had looked into tribal recognition whether there was any of this defendant extensively he hadn't found any and then there was a YMDOT tribe official who also testified as to her research and they had all concluded that Mr. Ortner was not an Indian um it would not have come up with a different outcome there's also what you're saying is the jury could have simply found on the lack of any indian blood yes stop there could have could have stopped there absolutely absolutely of the 8th Circuit did something really interesting there where they said look we haven't decided as the 10th Circuit has whether indian status is an element or not but we're just going to assume it's an element even if we assume it's an element because of that close connection between 1152 and 1153 we know this person committed a federal crime and a serious one and whether he was indian or not we're not going to let that affect us at the prom 4 stage that argument has a problem because under one section you have to prove beyond a reasonable doubt that the two statutes require proof of the element of indianess        to prove that the two statutes require proof of the element of indianess or non-indianess beyond a reasonable doubt whatever his prosecution requires has to be proved beyond a reasonable doubt and i think that is a problem for the 10th circuit your honor because if that is the interpretation and the circuit doesn't go the way of the 8th circuit in white horse then the very purpose stated in the statutes of 1152 and 1153 is to bring federal law to bear in indian country and all of a sudden we would have federal law with a very noticeable gap that's not unheard of look at the voluntary manslaughter defense but your honor if reason is the soul of law it doesn't it's not reasonable and where the court can avoid can avoid a bad outcome like that i thought it was very clever the way the 8th circuit chose to do that but here where the government made a choice they had they had they had both and they you know if we hadn't made a choice or if we made the other choice we'd be okay right so should i have chosen between a prong three argument and a prong four argument i mean i think my prong three argument is the strongest and that is that had the jury been instructed as the two other issues indeed let me turn to those now with respect to count one the transportation count the supreme court in puckett explained that the standard is the defendant must demonstrate that the error actually affected the outcome that it had a direct case and it is the best example of why we should win here on really on prong one um in wolf there were two different victims that the court addressed first this defendant had brought over a refugee family and had settled them in an apartment he had he owned and in the end he ended up abusing the wife and mother in that family when he was he was on trial for that and he said look i brought them here and settled them legitimately as a refugee family i only had this idea about abusing her if at all later um so he had this multiple purposes argument and the court held that that was plausible it was plain error not to tell the jury on those facts that that at the time of the transportation the defendant needed to have the intent so in that case the jury really did for that count the jury really did need to understand that his motive it had to be an important part of his motive to bring the family and settle them was that illegal sexual activity but there was a second woman after the woman he had abused and her family left his apartment he then resettled another refugee woman in the apartment and he began abusing her now he made the same argument that he had a noble intent he was trying to settle a refugee but as to that count the court said no that is not plain error at that point given the history your dual motive argument simply isn't strong enough to withstand plain error in this case no innocent motive was ever offered by the defendant and today an argument defense counsel is pointing out that the mother had asked him to help and that's true generally speaking but this defendant testified about the trip to Joplin at length and it starts at page 250 and he really notably never testified as to any innocent reason for bringing her along he simply explained he had a work errand in Joplin and that he said SW ran with me he also said they decided to have her go too so what evidence did we have of his intent at the time he crossed that state line? Who was they in that reference? It was unclear from the transcript it looked like he was saying the victim and him testified about the parents as was suggested wanting him to take any opportunity to take a drive with her there was another trip he took that the mother had asked him to take her on this one when I read the transcript I thought it meant the victim and him but she used a pronoun so I'm not sure Dunn and Lacey both 10th Circuit cases and Baish which is not a 10th Circuit case but what we have is what actually occurred to commit the federal crime you just have to have the intent in your head at the time you crossed the line you don't have to realize that intent but the realization of intent is some of the most probative evidence and that's what those cases recognized and the victim testified that he had alluded to sex in Joplin previously and you can read the exact part of the transcript at page 72 she also testified that they did have sex while they were there she explained it was cold and he then insisted that they have sex and after that point he demanded sex a lot more now the jury had seen a full continuum first he gifted big girl feathers then he gave clothes then he gave big girl panties then counts two and three were from Missouri State Law this whole sweep and the jury could look at that too in terms of deciding what his intent was at that moment that he crossed the state line briefly the instruction did not include Missouri State Law the victim was 15 he was significantly older that is illegal in every state and not only would jurors have common knowledge of that but also from this indictment they could infer that as I mentioned they had this sweep of escalating behavior to look at they knew that it was illegal to grope a 15 year old sexually it is a logical inference to assume then that it would be illegal to actually have penetrative sex and here they would be right because Missouri does make that illegal in fact Missouri makes it illegal to have sex with anyone under the age of 17 so this wouldn't work in all cases there would be cases well like the patent case where you have to explain the reason why the jury could have inferred from that was that this kind of conduct having sex with this victim in Joplin was illegal and the jury would have been correct in that inference if there are no further questions the government will rest and respectfully request that you affirm thank you thank you